IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00547-GCM

| | |
|---|---|
| ATLANTIC PINSTRIPING, LLC AND MICHAEL MONTEMURRO, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ATLANTIC PINSTRIPING TRIAD, LLC, ATLANTIC DEALER SERVICES COASTAL, LLC, TONY HORNE, WILLIAM E. HORNE, AND JERRY W. PARKER , | ) ) ) ) ) ) |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Defendants submit the following memorandum of law in opposition to Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

## I. INTRODUCTION

The individual Defendants entered into Franchise Agreements with Plaintiffs regarding the operation of a pin striping franchise. In June of 2016, without notice, Plaintiff Atlantic Pinstriping, LLC ("Atlantic") terminated the franchises, effective immediately. Defendants were given no opportunity to cure any alleged defaults. In their Motion for Temporary Restraining Order and Motion for Preliminary Injunction, Plaintiffs seek the enforcement of non-compete covenants within the Franchise Agreements (the "Non-Competes")

"The party who seeks the enforcement of the covenant not to compete has the burden of proving that the covenant is reasonable." *Hartman v. W.H. Odell & Associates, Inc.,* 117 N.C.

App. 307, 311, 450 S.E.2d 912, 916 (1994). In this matter, Plaintiffs cannot meet their burden for two reasons: (1) The non-compete covenants are overbroad, and thus not reasonably necessary to protect Plaintiffs' legitimate business interests, and (2) the non-compete covenants are not reasonable as to geographic scope.

## II. ARGUMENT

### A. Plaintiffs Do Not Meet Their Threshold Burden.

The Fourth Circuit recognizes that "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 816 (4th Cir. 1991) (internal quotations omitted) (emphasis added). *See also In re Microsoft Corp. Antitrust Litigation,* 333 F.3d 517, 524 (4th Cir. 2003) (containing the same cautionary language).

"The limited circumstances amount to the demonstration of a need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits." *Microsoft,* 333 F.3d at 526. "If that need is not presented, then a preliminary injunction should not be considered." *Id.* Such is the case presented here. The "need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits" is hereinafter referred to as the "Threshold Burden."

This inquiry is particularly important since there is considerable dispute about what represents the "status quo." If any injunction is appropriate, it is an injunction which reverses the wrongful termination and allows the franchisees to continue until a decision is reached on the merits.

If- and only if- Atlantic can meet the Threshold Burden, then the Court must analyze and balance the following four factors in determining whether to grant an injunction: (1) the

likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the request is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest. *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir. 1977). *See also Microsoft,* 333 F.3d at 526 n.3 (clarifying that the court need engage in the four-part balancing test only if the "limited circumstances" described above are deemed present).

It is Atlantic's burden, as the movant, to establish that each of the factors supports the issuance of an injunction. *See, e.g., Microsoft,* 333 F.3d at 526. ABT must "clearly establish[] its entitlement" to injunctive relief. *Merck & Co. Inc. v. Lon,* 941 F.Supp. 1443, 1455 (M.D.N.C. 1996).

### B. <u>Atlantic Will Suffer No Irreparable Harm</u>.

"It is axiomatic that a 'clear showing of irreparable harm' is a prerequisite to the issuance of a preliminary injunction." *The Hunter Group, Inc. v. Smith*, No. 97-2218, 1998 WL 682154, at *2 (4th Cir. Sept. 23, 1998) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 814 (4th Cir. 1991)).

Here, Atlantic has utterly failed to demonstrate irreparable injury. The only reference to "irreparable harm" in Atlantic's brief is a "phone conversation" Mr. Montemurro had with a dealer in Florida. (Montemurro Decl., ¶ 50) The referenced statement is clearly inadmissible hearsay. Worse, there is no indication when the "solicitation" occurred, what services were offered, and whether the solicitation was successful. Moreover, there is no allegation of lost business, or even proof that Atlantic operates a franchise in Venice, Florida.

In any event, "it is axiomatic that purely economic injury, such as that resulting from lost sales, profits or market share, does not constitute irreparable harm sufficient to warrant injunctive relief." *Olympus*, 2009 WL 275779, at *2 (quoting *SouthTech*, 428 F. Supp. 2d at

3

418). "North Carolina courts routinely recognize monetary damages measured by lost profits as adequate to redress a breach of a covenant not to compete." *SouthTech*, 428 F. Supp. 2d at 418.

To establish irreparable harm, a movant must show the following: 1) the identity of specific customers that it contends it has lost or will lose permanently; and 2) if permanent loss of customers is shown, how an award of monetary damages would be an inadequate remedy. *Olympus*, 2009 WL 275779, at *3 (denying motion for preliminary injunction where former employer failed to identify any lost customers); *see also Static Control*, 2007 WL 1447695, at *6 (finding movant "has not presented any admissible evidence to support a claim that it has lost customers or even that it will lose customers as a result of [former employee's] employment [with competitor).

Here, Atlantic has failed to identify any lost customers or sales. While it would be insufficient, Atlantic does not even contend that its sales in Defendants' former territories are down. *See SouthTech*, 428 F. Supp. 2d at 418 (holding that movant merely showing that sales were down was insufficient to show irreparable harm). Further, Atlantic does not attempt to explain how - assuming it could show the permanent loss of customers in the first place - monetary damages would be an inadequate remedy. Atlantic has, therefore, failed to satisfy its burden to make a clear showing of irreparable harm and, accordingly, the Court should deny the motion for preliminary injunctive relief.

It is Atlantic's burden to show that Defendants misappropriated trade secrets. *See, e.g., SouthTech*, 428 F. Supp. 2d at 419. "Under North Carolina law, customer information maintained in the memory of a departing employee is not a trade secret." *Asheboro Paper*, 599 F. Supp. 2d at 677. "North Carolina courts also are reluctant to prevent an employee from working for a competitor merely for the purpose of protecting confidential information." Id.

4

(citation and quotation omitted). Furthermore, the categories of information that Atlantic mentions have been found not to constitute trade secrets. *See, e.g., SouthTech*, 428 F. Supp. 2d at 419 (finding that movant failed to show irreparable harm where former employee may have possessed price lists, product information and customer lists).

Here, Defendants have voluntarily ceased using the patented applicators and the trademarks. (Horne Decl., ¶¶ 17, 19) Where voluntary compliance has occurred, there is no irreparable harm to justify an injunction. *See Noodles Development LP v. Ninth Street Partners*, LLP, 507 F.Supp.2d 1030, 1038 (E.D. Mo. 2007) (where defendant franchisee changed the name of the restaurant post-termination from "Nothing but Noodles" to "Ninth Street Café" no harm was shown even if noodle dishes continued to be served – request for injunction denied).

### C. <u>Atlantic Will Not Prevail on the Merits.</u>

The Court need only consider Atlantic's likelihood of success on the merits if Atlantic makes a clear showing that it will suffer irreparable harm if Defendants are not enjoined. As set forth above, Atlantic failed to do so. In the interest of completeness, we discuss the merits of the claims asserted by Atlantic.

#### 1. **Atlantic will not Prevail on its Breach of Contract Claims**

Atlantic lists numerous alleged breaches in the hope that quantity will compensate for quality. However, when one looks to the actual substance of the alleged breaches, it becomes clear that the termination was a sham.

##### a. *Atlantic Pinstriping Triad, LLC ("ATP") and Atlantic Dealer Services Coastal, LLC ("ADSC") are not parties to the franchise agreements*.

The Franchise Agreements (and the Owner Agreements) attached to the Complaint clearly identify individual owners as franchisees. Mr. Montemurro expressly stated he would not allow corporate entities to own franchises. (Horne Decl., ¶ 5). While Plaintiffs add a footnote

5

on "implied contract," the Franchise Agreements contain a Merger Clause. (Section 19.07) This is of critical importance because virtually all the alleged breaches are by these entities. For example, to support the claim that revenues were underreported, Atlantic offers evidence about the revenues of ATP. (Montemurro Decl., ¶¶ 26-27). The exhibit (#8) provides no description or explanation of what services were provided. Similarly, the alleged breaches of financial status rely exclusively on the financial statements of ATB and ADSC, rather than the financial condition of the actual franchisees.

### b. *Atlantic offered no opportunity to cure.*

The expectation of a cure period is established in section 15.03 of the Franchise Agreements, which states that, unless otherwise specified, Atlantic must provide 30-days' notice of breach and an opportunity to cure. The same section requires there be "good cause for any termination." Atlantic attempts to evade this requirement by referencing section 15.01, which allows for immediate termination in the event of certain circumstances, such as bankruptcy disability or death. Atlantic attempts to invoke "immediate" termination by referencing the "2 or more defaults" language of 15.02(g), but this language plainly is a reference to previous defaults. The notion that immediate termination without notice is available simply by alleging two defaults instead of one is entirely inconsistent with the notice provision of section 15.03, and would render that provision meaningless. Atlantic drafted the Franchise Agreement, and thus any ambiguity or inconsistency must be construed against it.

The other "immediate" grounds is the "inability to pay debts when due" under 15.01(a). However, the only evidence offered in support is a dispute with one supplier. There has been **no** evidence about the financial capacity of Defendants Tony Horne, William Horne, or Jerry Parker.

Furthermore, even where a party has the right to terminate a contract relationship, the law requires reasonable notification before the termination becomes effective in order to give the other party reasonable time to seek a substitute arrangement. This principle of good faith commercial practice was recognized in *Philadelphia Storage Battery Co. v Mutual Tire Stores*, 161 SC 487, 490, 159 SE 825 (1931) when the court stated that . . . "It (radio jobbing contract providing either party may terminate by giving written notice) may not be terminated, if the manner of its termination be against equity and good conscience."

Even where a franchise contract contains an express right to terminate the relationship at any time, there is an implied obligation to give reasonable notice of termination in order to allow sufficient time for the franchisee to make the necessary adjustment and that the relationship would continue for a reasonable time after notice of termination. *Gaines W. Harrison & Sons, Inc. v J. I. Case Co.*, 180 F.Supp 243 (D.S.C.1960).

### c. *Atlantic breached the duty of good faith and fair dealing.*

'In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.' " *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation omitted); *see also Governor's Club, Inc. v. Governor's Club Ltd. P'ship*, 152 N.C.App. 240, 251–52, 567 S.E.2d 781, 789 (2002). Here, the circumstances surrounding the termination, including the misrepresentation about the purpose of the visit (supposedly to bring needed supplies), and the failure to give any notice or opportunity to cure, smacks of unfairness.

It is settled law in that state that regardless of broad unilateral termination powers, the party who terminates a contract commits an actionable wrong if the manner of termination is contrary to equity and good conscience. *Philadelphia Storage Battery Co. v. Mutual Tire Stores*,

7

161 S.C. 487, 159 S.E. 825 (1931); *Gaines W. Harrison & Sons v. J.I. Case Co.,* E.D.S.C., 180 F.Supp. 243 (1960).

### 2. The Restrictive Covenants Are Unenforceable.

"The party who seeks the enforcement of the covenant not to compete has the burden of proving that the covenant is reasonable." *Hartman v. W.H. Odell & Associates, Inc.,* 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994). In this matter, Plaintiffs cannot meet their burden for two reasons: (1) The non-compete covenants are overbroad, and thus not reasonably necessary to protect Plaintiffs' legitimate business interests, and (2) the non-compete covenants are not reasonable as to geographic scope.

"North Carolina courts have long stated that covenants not to compete between an employer and employee are not viewed favorably." *Asheboro Paper and Packaging, Inc. v. Dickson*, 599 F. Supp. 2d 664, 671 (M.D.N.C. 2009) (*citing VisionAIR, Inc. v. James*, 167 N.C.App. 504, 508, 606 S.E.2d 359, 362 (2004)). "To be enforceable, a covenant must, among other things, be reasonable as to time, territory, and scope of activity." *Id*. "Under North Carolina law, restrictions must be 'no wider in scope than is necessary' to protect the business of the employer." *Id. (quoting VisionAIR*, 167 N.C.App. at 508, 606 S.E.2d at 362.

"Covenants not to compete restrain trade and are scrutinized strictly." *Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 598, 632 S.E.2d 563, 572 (2006) (citing *Kennedy v. Kennedy*, 160 N.C. App. 1, 9, 584 S.E.2d 328, 333 (2003)). Any ambiguity in a covenant against competition will be construed against the party who drafted the agreement. *Reichhold Chem., Inc. v. Goel*, 146 N.C. App. 137, 153, 555 S.E.2d 281, 291 (2001); *Washburn v. Yadkin Valley Bank & Trust*, 190 N.C. App. 315, 323, 660 S.E. 2d 577, 583 (2008), review den., 363 N.C. 139, 674 S.E.2d 422 (2009). In this case, Atlantic drafted the covenant and any ambiguities must be resolved against Atlantic. *Aeroflow, Inc. v. Arias*, 2011 NCBC 20, n. 4 (Jul. 5, 2011) (When

interpreting a contract, if the meaning is clear and only one interpretation is reasonable, the courts must enforce the contract as written, but if a provision is uncertain or open to several reasonable interpretations, doubts will be resolved against the drafter.) (citing *Woods v. Nat'l Ins. Co.*, 295 N.C. 500, 246 S.E.2d 773 (1978)).

Plaintiffs may argue that the Non-Compete should be subject to the somewhat less stringent standard of review associated with covenants against competition restricting the sellers of businesses from competition. *See Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 663-64, 158 S.E.2d 840, 843-44 (1968); *Seaboard Industries, Inc. v. Blair*, 10 N.C. App. 323, 178 S.E.2d 781 (1971). However, such cases are distinguishable as they involved restraint of the seller of the business; in this case, Defendants were the purchasers of a franchise from Atlantic. Atlantic has termed the relationship between the parties to the Franchise Agreement as that of an independent contractor. (Franchise Agreement § 12.01). Thus, the most stringent level of review should apply. *Starkings*, 67 N.C. App. 540, 313 S.E.2d 614 (1984) (Applying the traditional standard to a covenant with an independent contractor). Even if the Court were to consider the less stringent standard applicable to sellers of a business, Atlantic must prove the Non-Compete: "(1) [ ] is reasonably necessary to protect the legitimate interest of the purchaser; (2) [ ] is reasonable with respect to both time and territory; and (3) [ ] does not interfere with the interest of the public." *Jewel Box Stores*, 272 N.C. at 662-63, 158 S.E.2d at 843. Atlantic cannot meet that burden and the Non-Compete must not be enforced.

Here, the Motion should be denied as to the non-compete covenants because they are overbroad, geographically unreasonable, and consequently unenforceable. As Plaintiffs cannot establish that the covenants at issue are enforceable, they cannot establish a likelihood of success on the merits of the case.

### a. The non-compete is overly broad and thus not reasonably necessary to protect Plaintiffs' legitimate business interests.

The non-compete covenants prescribed in sections 16.08(a) and 16.08(b) of the franchise agreement are facially overbroad with respect to the manner of subsequent employment permitted under the covenants. Section (a) prohibits Defendants from "[being] employed by, associated with, or in any manner connected with . . . any business that offers pin striping services within 25 miles of your Territory . . ." for two years. Similarly, section (b) prohibits Defendants from "[being] employed by, associated with, or in any manner connected with . . . any business that offers pin striping services within 25 miles of any business owned or operated by us or any of our affiliates of franchisees . . ." for two years.

Crucially, both of these provisions prohibit Defendants from working for "any business that offers pinstriping," no matter in what capacity. As a result, the list of prohibited jobs under these covenants extends far beyond pin striping. BMW maintains an auto manufacturing plant in South Carolina. Under these non-competition provisions, if BMW manufactures any vehicles with pin stripes, Defendants would be prohibited from holding any job at the plant, no matter how far removed from the actual act of pin striping (i.e., custodial, human resources, security) he was. These covenants would prohibit Defendants from working as a car salesman in a dealership that offered pin striping as an upgrade to customers, or as an auto mechanic in a service center that does not advertise pin striping, but occasionally provides it upon customer request. Without question, Defendants would be prohibited from working in a strictly non-pin striping capacity (i.e., custodial) for a company that focuses solely on pin striping – and even this level of restriction is impermissibly broad.

North Carolina courts have consistently refused to enforce similar language in non-compete covenants. In *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508–09, 606 S.E.2d 359,

362–63 (2004), the Court refused to enforce a non-compete provision when, "[u]nder this covenant [Defendant] would not merely be prevented from engaging in work similar to that which he did for *VisionAIR* at *VisionAIR* competitors; [Defendant] would be prevented from doing even wholly unrelated work at any firm similar to *VisionAIR*. Further, by preventing [Defendant] from even "indirectly" owning any similar firm, [Defendant] may, for example, even be prohibited from holding interest in a mutual fund invested in part in a firm engaged in business similar to *VisionAIR*. Such vast restrictions on James cannot be enforced."

Similarly, in *Outdoor Lighting Perspectives Franchising, Inc. v. Harders*, 228 N.C. App. 613, 628, 747 S.E.2d 256, 267 (2013), the court refused to enforce a non-compete covenant when it was "unable to see how prohibiting Defendants from having any involvement in any business 'operating in competition with an outdoor lighting business' or any business 'similar' to the one [Defendants] operated as an OLP franchisee is necessary to protect any of Plaintiff's legitimate business interests. On the contrary, we believe that the restriction in question goes well beyond the prohibition of activities that would put Defendants in competition with Plaintiff. For example, [Defendants] would be prohibited from owning a franchise that sold and maintained indoor lighting or from obtaining employment at a major home improvement store that sold outdoor lighting supplies, equipment, or services as a small part of its business even if he had no direct involvement in that retailer's outdoor lighting operations."

Further, in both *VisionAIR, Inc., and Outdoor Lighting Perspectives Franchising, Inc.,* the question before the court was identical to the question before this Court, namely, whether to grant an injunction enforcing a non-competition agreement based on the likelihood of Plaintiffs' ultimate success on the merits. In each case, for the reasons described above, the court was

unwilling to conclude that success on the merits was likely due to the overbreadth of the non-compete covenants.

"A [restrictive] covenant must be no wider in scope than is necessary to protect the business of the employer." *Hartman,* 117 N.C. App. 307, 316, 450 S.E.2d 912, 919. Here, however, the covenants extend to means of employment wholly unrelated to the Plaintiffs' business interests. Not only do the covenants seek to restrict unrelated means of employment, they also seek to restrict mere association. According to both sections (a) and (b), Defendants may not "be employed by, associated with, or in any manner connected with . . ." a pin striping business. The franchise agreement fails to provide definitions for "association" or "connection," but no plausible definitions would likely satisfy the standards set by *VisionAIR, Inc.* and *Outdoor Lighting Perspectives Franchising, Inc.* – to say nothing of the protections of *U.S.C.A. Const.Amend. 1*. Seeking to ban former employees from maintaining an undefined "association" with other businesses is well beyond any enforceable protection for an employer's "legitimate business interests." *Okuma Am. Corp.,* 181 N.C. App. 85, 86, 638 S.E.2d 617, 618 (2007)

### b. *The non-compete covenants are not reasonable as to geographic scope*.

The non-compete covenants prescribed in sections 16.08(a) and 16.08(b) of the franchise agreement differ only by the prescribed geographic restriction. Section (a) prohibits Defendants from "[being] employed by, associated with, or in any manner connected with . . . any business that offers pin striping services within 25 miles of your Territory . . ." for two years. Similarly, section (b) prohibits Defendants from "[being] employed by, associated with, or in any manner connected with . . . any business that offers pin striping services within 25 miles of any business owned or operated by us or any of our affiliates of franchisees . . ." for two years.

In their Motion for Temporary Restraining Order and Motion for Preliminary Injunction, Plaintiffs assert that the relevant territories currently include Charleston, S.C., Columbia, S.C., and the "Coastal" territory that is "near Myrtle Beach."

In the very recent case of *Beverage Systems of the Carolinas, LLC v. Associated Beverage Repair, LLC,* 764 S.E.2d 457, 461 (2016), the North Carolina Supreme Court held that "a restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining his customers." (citation omitted)

Similarly, in *Asheboro Paper*, the non-compete agreement limited the employee from working for any person or business "engaged in the business of selling or distributing any type of kind of packaging products ... "[w]ithin a 150 mile radius of Asheboro Paper and Packaging, Inc. and any of its branch offices." 599 F. Supp. 2d at 668. The court found that this restrictive covenant was overly broad because "Asheboro Paper has failed to indicate the location of its customers within the restricted area to demonstrate that the geographic scope is necessary to maintain those customer relationships." *Id.* at 672. The court noted that "no customer lists or locations to justify the 150-mile radius were presented, and conclusory statements are not sufficient under North Carolina law to support the geographic scope of a covenant not to compete." *Id.* at 673. Similarly, there is no evidence to support a 25-miles radius.

In this matter, Plaintiffs have offered no such argument for how the prescribed geographic boundaries are required to preserve its business interests. Moreover, in *Outdoor Lighting Perspectives Franchising, Inc.*, 228 N.C. App. 613, 747 S.E.2d 256, the court confronted the question of whether a franchise agreement could prohibit competition within the original franchise territory. The court held that, "given that the non-competition provision contained in the franchise agreement prohibits Defendant from operating an outdoor lighting

13

business in areas in which neither Plaintiff nor its franchisees or affiliates are engaged in similar activities, we conclude that such a restriction is excessively broad given that Plaintiff has no legitimate reason for precluding Defendants from competing with franchisees or affiliates of Plaintiff which are not engaged in the outdoor lighting business. *Outdoor Lighting Perspectives Franchising, Inc.*, 228 N.C. App. 613, 625–26, 747 S.E.2d 256, 265.

### c. *Blue penciling cannot save the non-compete covenants*

If Plaintiffs' non-compete covenants are found to be unenforceable, there is no option for "blue pencil" revisions to amend them. "Blue-penciling is the process by which "a court of equity will take notice of the divisions the parties themselves have made [in a covenant not to compete], and enforce the restrictions in the territorial divisions deemed reasonable and refuse to enforce them in the divisions deemed unreasonable." *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 784 S.E.2d 457, 461 N.C. App. (2016). North Carolina has adopted the "strict blue pencil doctrine" meaning that when the language of a non-compete agreement is overly broad, the court may choose not to enforce a distinctly separable part of the agreement in order to render the provision reasonable. It may not completely rewrite the agreement. *Welcome Wagon Int'l, Inc. v. Pender,* 255 N.C. 244, 248, 120 S.E.2d 739, 742 (1961). However, "[t]he Agreement's territorial limits cannot be blue-penciled unless the Agreement can be interpreted so that it sets out both reasonable and unreasonable restricted territories." *Beverage Sys. of the Carolinas, LLC*, 784 S.E.2d 457, 461. If the provisions are not clearly separate, the "court is without power to vary or reform the contract by reducing either the territory or the time covered by the restrictions." *Welcome Wagon Int'l, Inc. v. Pender,* 255 N.C. 244, 248, 120 S.E.2d 739, 742.

In this matter, the non-compete covenants provide no enforceable alternative. As such, there is no vehicle for permissible blue-penciling.

### d. *Atlantic's breach precludes enforcement*

Regardless of the reasonableness of the Non-Compete, Plaintiffs' breach of the Franchise Agreement precludes enforcement of the Non-Compete. *See Ball v. Maynard*, 184 N.C. App. 99, 108, 645 S.E.2d 890, 897 (2007) ("It is well settled that where one party breaches a contract, the other party is relieved from the obligation to perform"); *see also Associated Spring Corporation v. Roy F. Wilson & Avent, Inc.,* 410 F.Supp. 967 (D.S.C. 1976)(franchisor which breached agreement would not be allowed to enforce non-compete covenant).

Here, Atlantic initially breached the Franchise Agreements by refusing to provided needed supplies. Then, without the notice required by and in violation of Section 15.03 of the Franchise Agreements , Atlantic terminated the franchise. These actions constituted a breach of the Franchise Agreements and thus bar enforcement of the Non-Compete. *Ball*, 184 N.C. App. at 108, 645 S.E.2d at 897.

## II. CONCLUSION

Based on the above arguments and authorities, Defendants respectfully request that the Court deny the Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

Respectfully submitted this this 25th day of August, 2016.

        **WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

        */s/ Mark P. Henriques*
        Mark P. Henriques (NC State Bar No. 18701)
        Jeffrey N. Jackson (NC State Bar No. 39780)
        301 South College Street, Suite 3500
        Charlotte, North Carolina 28202
        Telephone No.: (704) 331-4912
        Facsimile: (704) 338-7830
        mhenriques@wcsr.com
        jeffjackson@wcsr.com

        *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be served via the ECF system to counsel of record as follows:

ADDRESSEE(S):

canderson@bradley.com
mdeantonio@bradley.com

This the 25th day of August, 2016.

                                         *s/ Mark P. Henriques*
                                         Mark P. Henriques
                                         N.C. State Bar No. 18701

                                         *Attorney for Defendants*

17

WCSR 36955511v1