# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| Atlantic Pinstriping, LLC, and<br>Michael Montemurro,<br><br>        Plaintiffs,<br><br>v.<br><br>Atlantic Pinstriping Triad, LLC,<br>Atlantic Dealer Services Coastal, LLC,<br>Tony Horne,<br>William E. Horne, and<br>Jerry W. Parker,<br><br>        Defendants. | ) Case No.: 3:16-CV-547-GCM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PRELIMINARY INJUNCTION ORDER

THIS MATTER is before the Court on Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion," Doc. 5) and Brief in Support of Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. 6). Defendants responded in opposition to the Motion (Doc. 21) to which Plaintiffs replied (Doc. 27). Each of the Defendants have been served with process. (Docs. 9–13).

Plaintiffs have submitted five sworn declarations in support of the Motion. (Docs. 7, 8, 10, 22, 29). Defendants also submitted a sworn declaration in opposition to the Motion. (Doc. 20). On August 26, 2016, the Court conducted a hearing[1] on the Motion, at which time the Court received

---

[1] At this hearing, the Court converted Plaintiffs' motion for a temporary restraining order into a motion for a preliminary injunction. At the same time, the Court deferred the conclusion of the hearing so that it could consider Defendants' Motion to Dismiss or Alternatively, to Stay (Doc. 18), which the Court denied on September 12, 2016 (Doc. 28).

1

evidence in the form of live testimony. On September 20, 2016, the Court conducted a second hearing on the Motion at which time the Court received further evidence in the form of live testimony in addition to oral argument.

For the reasons set forth below, the court will **GRANT** the Motion for a preliminary injunction. Defendants Tony Horne, William E. (Ernie) Horne, Jerry W. Parker, Atlantic Pinstriping Triad, LLC ("APT"), and Atlantic Dealer Services Coastal, LLC ("ADSC") are enjoined from infringing Atlantic's trademarks and other intellectual property, and from further breaching the post-termination obligations of their franchise agreements, including their covenants not to compete, as more specifically set forth in this Order.

## *FACTS*

Plaintiffs have filed a First Amended Complaint (Doc. 24), which alleges, *inter alia*, the following facts:

On April 14, 2011, franchisor Atlantic Pinstriping, LLC ("Atlantic") entered into a franchise agreement with APT, Tony Horne, and Ernie Horne, granting them the right to operate an Atlantic Pinstriping® franchise in a territory near Charleston, South Carolina, for a term of five years. (Am. Compl. ¶¶ 57–58; Docs. 24-7, 24-8). That franchise agreement was renewed for a second five-year term in October 2015. (Am. Compl. ¶ 59). Tony Horne and Ernie Horne simultaneously signed an "Owners Agreement" guaranteeing performance and payment of this franchise agreement. (*Id.* ¶¶ 84, 86).

On November 13, 2012, Atlantic entered into a second franchise agreement with APT, Tony Horne, and Ernie Horne, granting them the right to operate an Atlantic Pinstriping® franchise in a territory near Columbia, South Carolina, for a term of five years. (*Id.* ¶¶ 88–89;

Docs. 24-10, 24-11). Tony Horne and Ernie Horne simultaneously signed an "Owners Agreement" guaranteeing performance and payment of this franchise agreement. (Am. Compl. ¶ 114, 116).

On January 22, 2015, Atlantic entered into a franchise agreement with ADSC, Tony Horne, Ernie Horne, and Jerry Parker, granting them the right to operate an Atlantic Pinstriping® franchise in a territory near Myrtle Beach, South Carolina, for a term of five years. (*Id.* ¶¶ 118–19, Doc. 24-13). Tony Horne, Ernie Horne, and Jerry Parker simultaneously signed an "Owners Agreement" guaranteeing performance and payment of this franchise agreement. (Am. Compl. ¶¶ 138, 140).

Atlantic owns two federally registered trademarks: ATLANTIC PINSTRIPING®, U.S. Reg. No. 2,981,763, which the United States Patent and Trademark Office has declared to be incontestable, and ATLANTIC DEALER SERVICES®, U.S. Reg. No. 4,789,279 (the "Atlantic Marks"). (*Id.* ¶¶ 21, 23, 24; Docs. 24-2, 24-3, 24-4). As part of the franchise agreements, Atlantic granted the Defendants a limited license to use the Atlantic Marks. Atlantic also provided Defendants with an operations manual (the "Manual"), which contains confidential and proprietary information about Atlantic's business. (Am. Compl. ¶¶ 37–38).

In conjunction with their franchise agreements, the Charleston and Columbia franchisees signed an equipment lease, under which they leased certain pin striping applicators and "heads" (which are attachments to the applicator) for use in connection with the franchised business. (Am. Compl. ¶¶ 78–79, 108–09; Docs. 24-9, 24-12). The tools and heads and the method for their use are a patented invention of Mike Montemurro, U.S. Patent No. 6,866,716 and U.S. Patent No. 7,427,427. (Am. Compl. ¶¶ 42–52; Docs. 24-5, 24-6). Mike Montemurro licenses the patents to Atlantic, which in turn licensed the patents to the Defendants through the franchise agreements and equipment leases. (Am. Compl. ¶¶ 53–55).

Each franchise agreement contains the following termination provision:

> <u>15.01 Termination by Us without Right to Cure</u>. You will be deemed to be in material non-curable default under this Agreement, and we may terminate this Agreement for good cause effective immediately upon delivery of notice of termination to you, for any of the following grounds: (a) you . . . are unable to pay your debts as they become due, . . . (f) you understate your Gross Revenue in any report of financial statement on 2 or more occasions; [or] (g) you commit any 2 or more defaults under this Agreement within any 12-month period."

(Docs. 1-7, 1-10, 1-13). Termination of the franchise agreements constituted an automatic termination of the corresponding equipment leases. (Am. Compl. ¶¶ 112).

Each franchise agreement contains a series of post-termination obligations, including obligations to (1) "immediately cease to use, in any manner whatsoever, any methods, procedures, or techniques associated with the [Atlantic Pinstriping] System and cease to use the [Atlantic] Marks in any manner;" (2) "immediately return [to Atlantic] the Manual;" (3) "immediately remove or obliterate the Marks from all marketing materials, supplies, signage and other items bearing any Marks" and to "follow the other steps we may require . . . for changing the identification of your operations;" (4) "provide to us all customer lists, contact information and vendor numbers;" (5) transfer and assign to us or our designee all telephone numbers, white and yellow page telephone references, and related advertisements;" (6) "cancel any assumed name or equivalent registration which contains any Mark;" and (7) immediately return to us all applicator tools and sets of heads as required under the Equipment Lease." (Docs. 1-7, 1-10, 1-13).

Each franchise agreement contains a covenant not to compete and a non-solicitation clause stating that the Defendants, for a period of two years after termination, shall not:

> (a) engage in or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend your name or any similar name to, or render services or advice

4

      to any business that offers vehicle pin striping services within 25 miles of your Territory; or

    (b) engage in or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend your name or any similar name to, or render services or advice to any business that offers vehicle pin striping services within 25 miles of any business owned or operated by us or any of our affiliates or franchisees; or

    (c) solicit or attempt to solicit any customer of the Franchised Business or any customer of ours or any of our affiliates or franchisees; or

    (d) solicit, employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who is or was an employee of ours or any of our affiliates or franchisees or in any manner induce or attempt to induce any employee of ours or any of our affiliates or franchisees to terminate his or her employment; or

    (e) interfere with our relationship with any person, including any person who at any time during the term of this Agreement was an employee, contractor, supplier, or customer of ours or yours.

(*Id.*). Each owners' agreement contains a similar covenant not to compete. (*Id.*).

Plaintiffs allege that in the one-year period from June 13, 2016 to June 13, 2016, Defendants committed a combined 48 defaults of their respective franchise agreements. (*See generally* Am. Compl; Doc. 6). On June 16, 2016, Plaintiffs delivered a letter to Defendants terminating all three franchise agreements and equipment leases ("Termination Notice"). (Am. Compl. ¶¶ 155, 171, 186; Doc. 24-14). On June 16, 2016, Defendants delivered a letter to Plaintiffs disputing the termination and stating that the Defendants "will not be complying with your requests or demands." (Am. Compl. ¶ 156, 173, 187; Doc. 24-15).

Plaintiffs' Motion requests that the Court enter a Preliminary Injunction on two accounts: enjoining Defendants' continued use of the Atlantic Marks, and enjoining Defendants' breaches of their post-termination obligations, including the covenant not to compete and the requirement to cease all use of the licensed equipment and any adaptations or copies thereof and return the pin striping applicators and heads to Atlantic.

## ANALYSIS

**A. Standard for Granting Preliminary Injunction.**

Preliminary injunctions are an extraordinary remedy whose primary function is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 525 (4th Cir.2003). Plaintiffs seeking a preliminary injunction must give notice to the opposing party under Federal Rule of Civil Procedure 65 and establish all four of the following elements: (1) plaintiffs are likely to succeed on the merits; (2) plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in plaintiffs' favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008). The most recent Supreme Court test was adopted by the Fourth Circuit in *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir.2009), vacated on other grounds, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010) (memorandum opinion), reissued in pertinent part, 607 F.3d 355 (4th Cir. 2010), overruling *Blackwelder Furniture Co. v. Selig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). In *Winter*, the Supreme Court emphasized that a plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. *Winter*, 129 S.Ct. at 375.

For the reasons articulated below, Plaintiffs have established all four requirements needed to obtain a preliminary injunction for their claims.

### B. Likelihood of Success on the Merits.

#### 1. *Trademark Infringement*

First, Atlantic has made a clear showing of likelihood of success on the merits with regard to its trademark infringement claim. To succeed on a trademark infringement claim, the plaintiff must show: (1) that it owns a valid and protectable mark; and (2) that the defendant's unauthorized use of that mark creates a likelihood of confusion. *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006); *Meineke Car Care Centers, Inc. v. Bica*, No. 3:11-CV-369, 2011 WL 4829420, at *3 (W.D.N.C. Oct. 12, 2011).

Here, the Atlantic Marks are federally registered, which is *prima facie* evidence of validity, ownership, and protectability. *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002). The Court finds Atlantic has a strong likelihood of succeeding on the merits of the first element of trademark infringement.

Regarding the second element, Atlantic expressly revoked Defendants' authorization to use the Atlantic Marks in its Termination Notice. In *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir.1983), the Court held that "continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement." Defendants contend that they have ceased all use of the Atlantic Marks. However, Plaintiffs have presented evidence to the contrary. Regardless, "'[I]t is well established that the voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit.'" *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001) (quoting *United States v. Jones*, 136 F.3d 342, 348 (4th Cir. 1998). Rather, "[D]efendants 'face a heavy burden to establish mootness . . . because otherwise they would simply be free to "return to [their] old ways" after the threat of a lawsuit has passed.'" *Id*. (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 71–72

(1983) (per curiam)). Based on the evidence, the Court concludes Atlantic has demonstrated a strong likelihood of succeeding on the merits of the second element of trademark infringement.

The Court therefore finds that Atlantic has demonstrated a strong likelihood of succeeding on the merits of its claim for trademark infringement.

### 2. Breach of Post-Termination Obligations

To prevail on its breach of contract claims, Atlantic must show "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). As an initial matter, the Court finds the Plaintiffs have demonstrated a strong likelihood of success on the merits of establishing that the franchise agreements, owners' agreements, and lease agreements all constitute valid and enforceable contracts.

As to the second element, the Plaintiffs have demonstrated a history of a multitude of defaults on the part of Defendants under the franchise agreements; specifically, evidence of 48 separate defaults within a year. These defaults became increasingly serious, to the point of exposing Plaintiffs to lawsuits due to Defendants' bad behavior. Moreover, there is convincing evidence of the Defendants' failure to comply with their post-termination obligations, including the obligation to return licensed intellectual property. The Court therefore finds the plaintiffs have met their burden of a clear showing of a likelihood of success on the merits on the second element of their breach of contract claims.

### 3. Validity of Covenant Not to Compete

Atlantic has the burden to show that the covenant not to compete is enforceable. *Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (1994). In North Carolina,[2]

---

[2] Each franchise agreement (§ 17.05), owners agreement (§ 6.01), and lease agreement (§ 14) contains a North Carolina choice of law provision. North Carolina courts recognize the validity of such choice of law provisions. *Sawyer v. Market Am., Inc.*, 190 N.C. App. 791, 794, 661 S.E.2d 750, 752 (2008).

a covenant not to compete is enforceable if it is "(1) in writing, (2) based upon valuable consideration, (3) reasonably necessary for the protection of legitimate business interests, (4) reasonable as to time and territory, and (5) not otherwise against public policy." *Kennedy v. Kennedy*, 160 N.C. App. 1, 9, 584 S.E.2d 328, 333 (2003).

Here, the covenant not to compete is in writing in the franchise agreements and owners agreements. (Docs. 1-7, 1-10, 1-13). Defendants received valuable consideration for the covenants not to compete in the form of the right to operate as Atlantic Pinstriping® franchises.

Enforcement of the covenant not to compete is necessary to protect the legitimate business interests of Atlantic. Atlantic has expended resources to develop its franchise system and operations manual and to build goodwill and obtain a reputation for vehicle pin striping services. The franchise agreements granted Defendants access to Atlantic's proprietary system of operation, use of Atlantic's brand, and exclusive territories in which to build successful businesses. If the Court allowed Defendants to continue to provide vehicle pin striping services in violation of the covenant not to compete, Defendants would be able to use the confidential and proprietary information they acquired from Atlantic to take business away from Atlantic and its franchisees.

The covenant is also reasonable as to time and territory. The two-year restriction is well within the range of what North Carolina courts have deemed reasonable in similar circumstances. *See, e.g.*, *Keith v. Day*, 81 N.C. App. 185, 193–94, 343 S.E.2d 562, 567–68 (N.C.Ct.App.1986) (two-year covenant reasonable); *Triangle Leasing Co., Inc. v. McMahon*, 327 N.C. 224, 229, 393 S.E.2d 854, 858 (N.C.1990) (two-year restriction reasonable). Defendants, moreover, did not contest the reasonableness of the two-year restriction.

The geographic scope of the covenant—within 25-miles of the former franchised territory or within 25 miles of any business owned or operated by the franchisor or any other Atlantic Pinstriping® franchisee—is well within the range of what North Carolina courts have deemed

reasonable in similar circumstances. *See, e.g.*, *Keith*, 81 N.C. App. at 193–94, 343 S.E.2d at 567–68 (greater Raleigh area was reasonable); *Forrest Paschal Mach. Co. v. Milholen*, 27 N.C. App. 678, 687, 220 S.E.2d 190, 197 (N.C.Ct.App.1975) (350 mile restriction enforced). This Court has enforced nearly identical provisions in similar cases. *See, e.g.*, *Meineke Car Care Centers, Inc. v. Bica*, No. No. 3:11-CV-369, 2011 WL 4828420, at * 5 (W.D.N.C. Oct. 12, 2011); *Meineke Car Care Centers, Inc. v. Glover*, 3:10-CV-667. , 2011 WL 240462 (W.D.N.C. Jan. 21, 2011), aff'd in part and dismissed in part, 11-1127, 2011 WL 4037412 (4th Cir. Sept. 13, 2011). North Carolina has enforced national territory restrictions in covenants not to compete when the plaintiff company does business nationally. *Harwell Enter., Inc. v. Heim*, 276 N.C. 475, 173 S.E.2d 316, 320 (1970).

Additionally, the covenant does not violate public policy. In *United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 380 (N.C. 1988), the Court observed that "it is as much a matter of public concern to see that valid [covenants] are observed as it is to frustrate oppressive ones." *See also Triangle Leasing Co., Inc.*, 327 N.C. 224 (enforcing a non-compete clause that restrained defendant from soliciting the business of plaintiff's known customers in any area in which the company operated for a period of two years).

Accordingly, Atlantic is likely to succeed on the merits of establishing that its covenant not to compete is valid and enforceable.

### C. Irreparable Harm.

Plaintiffs have made a clear showing that they are likely to suffer irreparable harm due to Defendants' infringement of Plaintiffs' intellectual property and Defendants' violation of their post-termination obligations. Plaintiffs have presented ample evidence that their goodwill and reputation with customers and vendors have been and will continue to be damaged if Defendants continue to violate their covenants not to compete and infringe Plaintiffs' intellectual property. Plaintiffs and the Atlantic Pinstriping® system will be harmed if Defendants use the knowledge,

manner, and training obtained through the former franchise relationship to gain customers within the restricted areas. Defendants will be able to draw customers from other Atlantic Pinstriping® franchisees by offering services at lower prices because Defendants are no longer paying franchise fees. This will burden other Atlantic Pinstriping® franchisees with unfair competition and will undermine the value of all of the non-compete agreements that Atlantic has with other franchisees.

**D. Balance of the Equities.**

The balance of the equities tips in favor of the Plaintiffs. Any alleged potential harm to Defendants is a result of Defendants' own conduct. Such self-inflicted harm is far outweighed by the damage to the Plaintiffs that would result if Defendants were allowed to continue to violate the covenant. Defendants specifically agreed to abide by the covenant when they signed their agreements. Thus any harm they suffer is a consequence of their failure to abide by the agreements.

**E. Public Interest.**

The issuance of a preliminary injunction will serve the public interest. First, it will encourage franchisors like Atlantic Pinstriping, LLC to continue to invest substantial assets in providing franchisees with training, skills, and promotional advantages of a recognized trade name, which enable them to establish their own businesses at reduced costs. Also, it will protect the investments franchisors make in developing those systems and prohibit a third party from taking advantage of the skills and goodwill they were provided without paying what they agreed in exchange. Moreover, there is a strong public interest in honoring the sanctity of a contractual relationship.

*CONCLUSION*

Because Plaintiffs have established all four elements needed to obtain a preliminary injunction, the Court **GRANTS** Plaintiff's Motion and enjoins Defendants from infringing

Atlantic's trademarks and further breaching the post-termination obligations of their franchise agreements, including their covenants not to compete.

Defendants shall immediately comply with this Order. *See Baskin-Robbins, Inc. v. Golde*, No. 5:99-CV-102, 2000 WL 35536665 (E.D.N.C. May 25, 2000) (Britt, J.) (holding that injunction begins with date of court order because the "court believes that, to allow defendants to ignore their covenant not to compete and then to escape the consequences of that covenant while plaintiffs attempt to enforce it through the judicial process, would provide a windfall to defendants and unnecessarily penalize plaintiffs.").

Specifically, Defendants are **ORDERED** as follows:

1. To cease use of the Atlantic Marks or any marks confusingly similar thereto;

2. To comply with the post-termination obligations of their franchise agreements, owners' agreements, and lease agreements, and more specifically:

   a. To immediately cease to use, in any manner whatsoever, any methods, procedures, or techniques associated with the Atlantic Pinstriping® franchise system;

   b. To return to Atlantic any and all copies of the Manual;

   c. To remove or obliterate the Atlantic Marks from all marketing materials, supplies, signage and other items bearing any Atlantic Marks and to change the identification of their operations so that there is no reference to the Atlantic Marks;

   d. To provide to Atlantic all customer lists, contact information, and vendor numbers;

e. To transfer and assign to Atlantic all telephone numbers that are owned by or paid for by the Defendants, any white and yellow page telephone references, and any related advertisements;

f. To cancel any assumed name or equivalent registration which contains any part of the Atlantic Marks, including but not limited to Atlantic Pinstriping Triad, LLC and Atlantic Dealer Services Coastal, LLC or effect a name change for such registration so that it no longer contains any part of the Atlantic Marks; and

g. To cease all use of, and return to Atlantic, all applicator tools and sets of heads, and to destroy or turn over to Atlantic any copies or adaptations thereof.

3. To comply with the post-termination covenant not to compete, more specifically, for a period of two years following entry of this order, Defendants may not:

   a. Engage in or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend their names or any similar name to, or render services or advice to any business that offers vehicle pin striping services within 25 miles of Defendants' territories;

   b. Engage in or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend their

names or any similar name to, or render services or advice to any business that offers vehicle pin striping services within 25 miles of any business owned or operated by Atlantic or any of its affiliates or franchisees;

c. Solicit or attempt to solicit any of Defendants' customers during the period when they were Atlantic Pinstriping® franchisees or any of Atlantic's customers or any of Atlantic's affiliates' or franchisees' customers;

d. Solicit, employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who is or was an employee of Atlantic or any of Atlantic's affiliates or franchisees or in any manner induce or attempt to induce any employee of Atlantic or any of Atlantic's affiliates or franchisees to terminate his or her employment; and

e. Interfere with Atlantic's relationship with any person, including any person who at any time during the term of the franchise agreements was an employee, contractor, supplier, or customer of Atlantic or Defendants.

f. Within 30 days after the entry of this Order, Defendants shall file with the Clerk of this Court and serve on Plaintiffs a report in writing and under oath setting forth in detail the manner and form in which they have complied with this Order.

Plaintiffs shall post a bond in the amount of $133,000.00 as soon as is practicable after entry of this Order.

**IT IS SO ORDERED.**

Signed: September 23, 2016

Graham C. Mullen
United States District Judge